UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEAN TOWARD,

    Plaintiff,

v.

JOSEPH LENTINE,
AARON ROBINSON,
and JILL GRAY,

    Defendants.
    _____/

Case No. 08-14181

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING DEFENDANT GRAY'S MOTION
FOR SUMMARY JUDGMENT** (docket no. 20) **AND AMENDING EARLIER
ORDER DISMISSING DEFENDANTS LENTINE AND ROBINSON** (docket no. 19)

    In this action, Plaintiff Dean Toward sued Chesterfield Township police officers Joseph Lentine, Aaron Robinson, and Jill Gray, for violation of his constitutional rights, as well as for false arrest and false imprisonment under Michigan state law.  The claims against Lentine and Robinson were dismissed without prejudice pursuant to a stipulation by the parties and approved by the Court.  Docket no. 19.  The matter comes before the Court on Gray's motion for summary judgment on all counts.  Gray argues that she had probable cause to arrest Toward, or in the alternative that she is protected by qualified and governmental immunity.  For the reasons stated below, the Court will grant Gray's motion for summary judgment and enter judgment in her favor.  Furthermore, because the rationale for entering judgment in Gray's favor applies with equal weight to Robinson and Lentine, the Court will amend its earlier order dismissing Lentine and Robinson to indicate the dismissal is *with* prejudice.

**BACKGROUND FACTS**

The following facts are undisputed unless otherwise indicated. On February 15, 2008, Officers Aaron Robinson and Joseph Lentine of the Chesterfield Township Police Department each responded to an emergency operator dispatch regarding a possible domestic disturbance at Toward's home. Police Report, Lentine Narrative; Robinson dep. p. 4. Apparently, Toward and his wife's daughter, Carrie Miller, got into an argument when Miller arrived at Toward's home to pick up her children. Toward had been babysitting Miller's children for the day. Toward dep. pp. 28, 33-36; Miller statement p. 1. The argument between the two only involved words at that point. Miller retrieved her children and left. Miller returned, however, after realizing she had forgotten some documents and her daughter had left a children's book at Toward's home. Miller statement p. 1.

When Miller arrived at Toward's home, she sent her daughter to Toward's front door to retrieve the forgotten papers and children's book. *Id.* Miller's daughter rang the doorbell over and over again, but Toward did not answer. Miller then went to the door and began to ring the door bell. *Id.* Toward finally came to the door and saw Miller's daughter with Miller standing behind her. Miller's daughter asked Toward for the children's book and Miller asked for her papers. *Id.*; Toward dep. pp. 43-44. Toward told Miller she could not come in the home, but that her daughter could. Miller statement p. 1; Toward dep. pp. 44.

At this point, Toward testified, Miller began reaching for the door and trying to enter while Toward tried to keep her out. Toward dep. pp. 45-47. According to Toward, Miller eventually swung the door open and her daughter attempted to run under Miller's feet, but was trampled in the process. *Id.* Toward eventually opened the door to free Miller's daughter, but at the same time allowed Miller in the home. *Id.* According to Toward, Miller then began to strike Toward in the face with her fists. Toward claims he was trying to

protect himself. At some point, Toward fell to his knees and Miller struck him on the back of his head. *Id.* p. 48. Toward rose to his feet and allegedly received a head-butt to the stomach. *Id.* p. 49. Toward then grabbed the back of Miller's jacket and forced her to the ground. *Id.* p. 50. Toward then tried to run from Miller, grabbed his phone, and ran outside to call 911. *Id.* p. 51.

Miller's version of the story varies as to who started the fight. In her written statement taken the very same day, Miller indicates that *Toward* – not Miller – swung the front door open, and, in the process, struck Miller's daughter in the stomach with the door. Toward then grabbed Miller by her hair, pulled her inside his home and began fighting. Toward then "backed away," Miller retrieved her papers and Toward called 911. Miller statement. pp. 1-2. The fact of which party actually started the fight is not relevant to resolving the issue in this case. The issue is whether Gray had probable cause to believe, based on all the facts available to her at the time, that Toward battered Miller.

Shortly after the fight concluded, Officers Lentine and Robinson arrived at Toward's home. Both officers interviewed Toward and Miller, and both Toward and Miller accused the other of starting the fight. Police Report, Lentine narrative; Robinson dep. p. 5. Toward was adamant with officers that Miller be arrested. Robinson dep. 8. Robinson recognized Miller and Toward as relatives. Toward was married to Robinson's brother-in-law's mother, but Robinson testified he was unbiased as to both Toward and Miller. Robinson dep. pp. 3-4.

After speaking with both Toward and Miller, Robinson told Toward that it appeared as if Toward, not Miller, would be arrested. *Id.* p. 8. At this point, Toward insisted that Robinson call his commanding officer to the scene because Toward believed Robinson was biased and that it would be better to get an objective assessment and let the commanding

officer determine who started the fight and who should be arrested. *Id.*; Toward dep. p. 64-65. Robinson obliged and called his command officer, Sergeant Jill Gray. Robinson dep. p. 8.

Gray arrived at Toward's home fifteen minutes later. Robinson told Gray he was related to Toward through marriage and that Lentine would fill in Gray on the details. Gray told Robinson he could leave and Robinson left. Gray took over the investigation. *Id.* p. 10; Gray dep. p. 7. Gray interviewed Toward first and then Miller and her daughter. Gray did not interview anyone else. Toward told Gray his side of the story, indicating how Miller had started the fight. Gray asked Toward repeatedly if he had any marks on his body from the fight and Toward consistently said he did not. Gray narrative p. 1 (exhibit one to Gray's deposition). Toward told Gray to speak with Miller's daughter who would confirm that Miller started the fight. Toward told Gray he wanted to press charges against Miller. *Id.*

Gray then spoke with Miller about the fight and asked if Miller had sustained any injuries. Miller stated that she had clumps of hair falling out of her head from when Toward pulled her into his house by her hair. *Id.* Gray observed Miller's hair falling out. *Id.* Miller also said she thought her left ring finger was broken and that her daughter's stomach was aching from when Toward swung the door open and hit her. Miller stated her head hurt from her hair being pulled out. *Id.*

Gray then spoke with Miller's daughter alone in Miller's vehicle. Miller's daughter told Gray that her "belly hurt from papa (suspect Toward) hitting her with [the] door." *Id.* Gray asked Miller's daughter who started fighting and she responded that "her grandfather started fighting with her mom." *Id.* Gray admits that she never asked Miller's daughter whether she asked what she meant by "started fighting" – whether that meant words or fists – but states that the daughter's statements conveyed to her that Toward started the fight.

4

Gray dep. p. 11. The daughter also told Gray that Toward was the one that hit her in the belly with the door and went after her mother. *Id.* p. 10. Gray testified that after she determined Toward was the aggressor, she arrested him. *Id.* pp. 9-10. She determined Toward was the aggressor based on her interview of Toward, Miller, and Miller's daughter, as well as the fact that Miller had loose hair, which Gray witnessed falling out, and that Miller thought her finger was broken, while Toward admitted he had no injuries. *Id.* pp. 11-12; Gray narrative p.1.

Gray arrested Toward for domestic violence, Mich. Comp. Laws 750.81(2). Toward was released on a personal bond 16 hours after being arrested. A request for warrant authorization was completed and forwarded to the prosecutor's office requesting Toward be charged with domestic assault. Charges were never filed.

Toward sued Officers Lentine and Robinson, and Sergeant Gray under 42 U.S.C. § 1983 for violation of his Fourth and Fourteenth Amendment rights, as well as for false arrest and false imprisonment under Michigan law. On November 12, 2009, upon stipulation of the parties, the Court dismissed, without prejudice,[1] Toward's claims against Lentine and Robinson, leaving only the claims against Gray.

## DISCUSSION

I. <u>Summary Judgment Standard</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any

---

[1] The parties incorrectly titled the stipulation and proposed order "Order of Dismissal of Defendants' [sic] Lentine and Robinson *With* Prejudice and Without Costs" (emphasis added). The body of the stipulation, however, indicates the parties intended to dismiss claims against Lentine and Robinson *without* prejudice, and that is how the Court will construe it.

5

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) (citation omitted).

The moving party has the burden of demonstrating that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992). A fact is "material" if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*

In opposing a motion for summary judgment, the nonmoving party must do more than raise some doubt as to the existence of a fact; it must produce evidence that would be sufficient to require submission of the issue to a jury. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

II. Analysis

   A. Constitutional Claim

Defendant Gray argues that because no reasonable jury could disagree that she had probable cause to believe Toward had committed a crime, Toward's constitutional claim under section 1983 must fail. The Court agrees and will grant Gray summary judgment on Toward's constitutional claim.

The Fourth Amendment protects persons against "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment has been incorporated into the Due Process Clause of the Fourteenth Amendment and is thereby applicable against the States. *See Wolf v. Colorado*, 338 U.S. 25, 69 (1949), *overruled on other grounds*, *Mapp v. Ohio*, 367 U.S. 643 (1961). Just as a warrant may not issue absent probable cause, an officer must also have probable cause to arrest a person without a warrant for the arrest/seizure to be "reasonable." *See Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001). Accordingly, in order to succeed on a wrongful arrest claim under section 1983, a plaintiff must prove the police lacked probable cause to arrest him. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). If probable cause existed, however, the claim fails.

"Probable cause exists where there is a fair probability that the individual to be arrested has either committed or intends to commit a crime." *Id.* (internal quotation and citation omitted). Probable cause to make an arrest exists if, at the moment of arrest, "the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Klein*, 275 F.3d at 550 (quotations and citations omitted). A finding of probable cause does not require evidence that is completely convincing or even evidence that would be admissible at trial. *Parsons*

*v. City of Pontiac*, 533 F.3d 492, 501 (6th Cir. 2008); *see also Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) ("Probable cause requires only the *probability* of criminal activity ....") (emphasis added).  The probable cause determination is assessed from the perspective of a reasonable officer on the scene, rather than from the 20/20 vision of hindsight.  *Klein*, 275 F.3d at 550.  An officer must consider any inculpatory and exculpatory evidence before determining whether probable cause exists.  *Id.* at 551.  Generally, whether there was probable cause for purposes of a section 1983 action is a question for the jury, unless there is only one reasonable determination a jury could make.  *Id.* at 550.

Toward was arrested without a warrant on Gray's probable cause determination that he committed domestic assault, Mich. Comp. Laws 750.81(2).  The statute provides:

> (2) Except as provided in subsection (3) or (4), an individual who assaults or assaults and batters his or her spouse or former spouse, an individual with whom he or she has or has had a dating relationship, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household, is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

Mich. Comp. Laws 750.81(2).  Miller was a former resident at Toward's home and Gray was aware of that fact at the time she arrested Toward.  Gray dep. p. 12.  Under Michigan law, "[d]omestic assault is a specific intent crime that is proved by establishing that the defendant and the victim are associated in one of the ways set forth in M.C.L. § 750.81(2) ... and that the defendant ... intended to batter the victim." *Klein*, 275 F.3d at 551 (citing *People v. Corbiere*, 220 Mich. App. 260, 266 (1996).  A battery is the "willful touching of the person of another by the aggressor or by some substance put in motion by him." *Id.* (citing *People v. Bryant*, 80 Mich. App. 428, 433 (1978)).  If one acts in lawful self-defense, he can not be found to batter another.

8

Considering the above standards, the discrete issue to be decided is whether the evidence provided in the police reports and depositions is so one-sided that a reasonable jury must conclude that Gray had probable cause to believe Toward battered Miller; that is, does the evidence demonstrate conclusively that there was a "fair probability" that Toward started the fight? The Court answers these questions in the affirmative. A reasonable jury would have no choice but to find that a prudent officer in Gray's shoes would have concluded there was probable cause to believe Toward battered Miller. The Court finds that this is the only reasonable determination a jury could possibly make.

The evidence available to Gray at the time she arrested Toward, upon which she relied in finding probable cause, included the following: 1) Miller's statement that Toward swung open the front door that hit Miller's daughter in the stomach, that Toward was angry and started the fight, that he grabbed Miller by her hair and forced her to the ground inside the home, and that her finger had been injured during the fight; 2) Toward's statement that Miller continually rang the doorbell which made his dogs begin to bark and made him angry, that when he opened the door Miller head-butted him in the stomach, his admission that he grabbed the back of Miller's jacket and hair, ripping out her hair and forcing her down to the ground, his statement that Miller punched him the in the face numerous times; 3) Miller's daughter's statement that her stomach "hurt from papa" hitting her with the door, and that her grandfather started fighting with her mom; 4) Gray's observance of physical injuries to Miller including her hair falling out, aching head, and Miller's statement that he finger was injured; and 5) the lack of any injury to Toward despite the fact that he said he had been punched in the face and head-butted in the stomach. Considering these facts available to Gray at the time she arrested Toward, there is only one reasonable

9

determination a jury could possibly make – Gray had probable cause to believe that Toward had committed a domestic on against Miller.

Toward argues "a reasonable jury could rightfully find that Robinson knew that there was no probable cause to arrest Mr. Toward, but allowed Gray to arrest Mr. Toward anyway because it was easier than calling child protective services [to pick up Miller's children were she arrested]." Pl. Br. p. 7. The Court disagrees. At the time Toward was arrested, Robinson had left the scene, so he could not have "allowed" Gray to arrest Toward. Moreover, it was *Gray* who decided to arrest Toward after making an independent determination of who started the fight. As soon as Gray arrived, she excused Robinson, and he left. Gray dep. p. 7. Robinson was cognizant of the relationships he had with both Miller and Toward and did not give Gray his opinion as to who should be arrested. Robinson dep. p. 10. There is no evidence in the record of any discussion between Gray and Robinson suggesting some sort of conspiracy between the two to unlawfully arrest Toward rather than Miller. Toward's bare suspicion of conspiracy is insufficient to preclude summary judgment. *See Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (to defeat summary judgment, the opponent must point to sufficient probative evidence that would permit a finding in his favor on more than "mere speculation, conjecture, or fantasy"). Here, all Toward has to suggest that Robinson tainted Gray's independent judgment is the fact that he saw Robinson and Gray converse when Gray arrived, and heard Robinson say that Toward was agitated and adamant about pressing charges, both of which Toward admitted were true. Toward dep. pp. 66-67. Both Gray and Robinson testified, however, that they spoke with one another only briefly when Gray arrived, and that Robinson did not give any opinion on the matter. Gray dep. pp. 6-8; Robinson dep. p. 10. Gray testified that she made the determination to arrest Toward based on her independent determination that

probable cause existed, and not on the basis of anything Robinson told her. Gray dep. pp. 9-12.

Toward further argues that "a reasonable jury could also find that Robinson told Gray the situation, and Gray decided that it would be better to arrest Mr. Toward than Miller for whatever predetermined reason." Pl. Br. p. 7. Again, the Court disagrees, for the reasons stated above – that there is no evidence of any such conversation between Gray and Robinson. Further, to the extent that Gray had ulterior motives in arresting Toward – of which there is no evidence – those motives are irrelevant here since probable cause existed to believe Toward had committed a domestic assault. *See Whren v. United States*, 517 U.S. 806, 813 (1996) (Fourth Amendment reasonableness determination does not depend on actual motivations of the individual officers absent any intentionally discriminatory application of the laws based on considerations such as race); *Criss*, 867 F.2d at 262 ("If the circumstances, viewed objectively, support a finding of probable cause, the arresting officer's actual motives are irrelevant.").

For the foregoing reasons, the Court finds that Gray has met her burden of establishing the absence of any genuine issue of material fact as to whether Gray had probable cause to arrest Toward for domestic violence. Since no jury could disagree that Gray had probable cause, Gray is entitled to judgment as a matter of law on Toward's constitutional claim.

    B.  <u>State Law Claims</u>

Gray also claims that because no reasonable jury could disagree that she had probable cause to arrest Toward for domestic violence, Toward's state law claims must fail as well. The Court agrees.

To prevail on a claim of false arrest or false imprisonment under Michigan law, a plaintiff must show that the arrest was illegal, i.e., that the arrest was not based on probable cause. *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18 (2003).  If the arrest was based on probable cause, however, there can be no false arrest or false imprisonment.  *Id.*  As discussed above, no reasonable jury could disagree that Gray had probable cause to arrest Toward for domestic violence. Accordingly, Toward cannot prevail on his false arrest and false imprisonment claims and judgment will be entered in Gray's favor on the state law claims.[2]

### CONCLUSION AND ORDER

For the foregoing reasons, summary judgment is appropriate on all of Toward's claims against Gray.  Judgment will be entered in Gray's favor.[3]

**WHEREFORE**, it is hereby **ORDERED** that Gray's motion for summary judgment (docket no. 20) is **GRANTED** and judgment will be entered in favor of Gray.

It is further **ORDERED** that Court's order at docket no. 19 is **AMENDED** and the claims against Defendants Robinson and Lentine are **DISMISSED with prejudice**.

**SO ORDERED.**

---

[2] Because the Court concludes that no jury could doubt that there was probable cause to arrest Toward, the Court need not reach Gray's claims that she is entitled to qualified and governmental immunity.

[3] Counsel for Gray argues that because the reasons for granting summary judgment in her favor apply with equal weight to Robinson and Lentine, e.g., no reasonable jury could find that Gray lacked probable cause to arrest Toward, if the Court enters summary judgment in Gray's favor, it should also amend the order dismissing the claims against Robinson and Lentine to indicate that the dismissal is *with* prejudice.  The Court agrees and Toward offers no argument as to why this would not be appropriate.  The Court will amend the order dismissing Toward's claims against Robinson and Lentine to indicate that the dismissal is with prejudice.

        s/Stephen J. Murphy, III
        STEPHEN J. MURPHY, III
        United States District Judge

Dated: February 1, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 1, 2010, by electronic and/or ordinary mail.

        Alissa Greer
        Case Manager